## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.R. SOKOL, INC., | ) | Civil Action - Law |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Docket No. |
| | ) | |
| NORTHPOINT DEVELOPMENT, LLC | ) | |
| and NP NEW CASTLE, LLC, | ) | |
| | ) | |
| Defendants. | ) | Jury Trial Demanded |

---

## COMPLAINT

COMES NOW the Plaintiff, by and through its undersigned attorneys, and, for its Complaint against the Defendants, alleges as follows:

### NATURE OF THE ACTION

1.     This is a diversity action involving common law claims under Pennsylvania law. The Plaintiff asserts claims against the Defendants for breach of contract.

### PARTIES

2.     The Plaintiff, A.R. Sokol, Inc. ("A.R. Sokol"), is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 364 Kline Road, Orangeville, Pennsylvania 17859.

3.     The Defendant, Northpoint Development, LLC ("Northpoint Development"), is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business at 5825 NW 41st Street, Suite 500, Riverside, Missouri.

4.      The Defendant, NP New Castle, LLC ("NP New Castle"), is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business at 5825 NW 41st Street, Suite 500, Riverside, Missouri.

## JURISDICTION AND VENUE

5.      This Court has federal diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6.      This Court has specific personal jurisdiction over the Defendants because they have sufficient contacts with the State of Pennsylvania.

7.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claim arose in this judicial district.

## FACTS

8.      On or about October 24, 2016, the owner of the Schuylkill Mall, Empire Schuylkill L.P. ("Empire"), filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania.

9.      William G. Schwab ("Schwab") was appointed as bankruptcy trustee to oversee the liquidation of the Schuylkill Mall.

10.     On or about December 27, 2016, A.R. Sokol entered into a Service Contract ("Contract") with the Schuylkill Mall ("Mall") owner, Empire Schuylkill L.P., and the owner's agent, CBRE.  Schwab, as trustee, signed the Contract on behalf of Empire.

11.     The Mall property, including parking lots, sidewalks and access roadways, which A.R. Sokol was also required to service under the Contract, measured approximately

1,778,102 square feet.  Additionally, A.R. Sokol was required to clear snow from the roof of the Mall to prevent it from blowing into the parking lots, sidewalks and access roadways.  The roof of the Mall measured approximately 888,718 square feet.  A true and correct copy of the calculation of the square footage of the Mall parking lot and roof is attached as Exhibit A.

12.     The term of the Contract was October 27, 2016 to April 30, 2017.  However, the Contract was not signed by A.R. Sokol until December 15, 2016 and by Schwab until December 27, 2016.

13.     The Contract provided that the owner, Empire Schuylkill L.P., or the owner's agent, CBRE, has the right to cancel and terminate the contract immediately upon the sale of the property.

14.     The Contract provided that Empire could substitute its designation of "CBRE, Inc." at any time and for whatever reason without consent of A.R. Sokol.

15.     As part of the Contract, A.R. Sokol entered into a Snow Removal Agreement ("Agreement") for the 2016-2017 snow removal season with the owner's agent, CBRE/FAMECO, on or about December 27, 2016.

16.     The Agreement provided that snow would be plowed in the Mall parking lot when it reached more than two inches.  Sidewalks would be cleared and treated with calcium chloride and the parking lot and access roadways would be treated with rock salt.  In the event that snow did not accumulate to two or more inches, A.R. Sokol would take whatever steps were necessary to ensure that the parking lot, access roadways and sidewalks were clear of any snow or ice.  In addition to plowing the parking lot and

access roadways, A.R. Sokol hand-shoveled and/or cleaned all sidewalks around the Mall stores.

17.    The Agreement provided for payment of $8,386.90 per inch for snowfall up to 43 plowable inches.  The Snow Removal Agreement also provided for payment of $8,386.90 per inch for snowfall above 43 inches.

18.    The Agreement provided that light ice salting treatment services due to freezing rain/sleet would be billed at a rate of $4,683.28 additional per visit.

19.    In calculating its snow removal price, A.R. Sokol was instructed by Elaine Maneval, a CBRE employee and the Mall manager, to factor into its per inch price that it would be required to plow the Mall property on occasions when snow accumulation did not reach two inches.  In these instances, A.R. Sokol would perform snow removal services but only be paid $4,683.28 for light ice salting treatment.

20.    On or about January 24, 2017, Northpoint Development purchased the Schuylkill Mall for $2.1 million at bankruptcy auction.

21.    On or about January 27, 2017, the sale was approved by Chief Judge Robert N. Opel II of the United States Bankruptcy Court for the Middle District of Pennsylvania.

22.    On or about February 22, 2017, Anthony Sokol ("Sokol"), President of A.R. Sokol, emailed the owner's agent, CBRE, to inquire about what would happen to the Contract after Northpoint Development took control of the property on February 28, 2017.

23.     Despite the termination provision in the Contract, the owner's agent assured Sokol that the Plaintiff would be paid as per the Contract.  Based on this statement, the Plaintiff continued to remove snow at the Mall property.

24.     On or about February 28, 2017, NP New Castle purchased the Schuylkill Mall for $2.1 million.

25.     On or about March 6, 2017, NP New Castle recorded the deed to the Schuylkill Mall property at the Recorder of Deeds in Schuylkill County, Pennsylvania

26.     On or about March 10, 2017, A.R. Sokol removed 5.5 inches of snow from the Schuylkill Mall property at a total cost of $41,934.50.  In addition, A.R. Sokol spread salt on the parking lot and shoveled and spread calcium chloride on the sidewalks of the property.

27.     On or about March 14, 2017, A.R. Sokol removed 21.5 inches of snow from the Schuylkill Mall property at a total cost of $176,124.90.  In addition, A.R. Sokol spread salt on the parking lot and shoveled and spread calcium chloride on the sidewalks of the property.

28.     On or about March 18, 2017, A.R. Sokol removed .8 inches of snow from the Schuylkill Mall property at a total cost of $4,683.28.  In addition, A.R. Sokol spread salt on the parking lot and shoveled and spread calcium chloride on the sidewalks of the property.

29.     On or about March 24, 2017, A.R. Sokol removed a widely scattered coating of snow from the Schuylkill Mall property at a total cost of $4,683.28.  In addition, A.R.

Sokol spread salt on the parking lot and shoveled and spread calcium chloride on the sidewalks of the property.

30.     After NP New Castle recorded the deed to the Schuylkill Mall property on March 6, 2017, A.R. Sokol removed snow on the above-referenced four occasions at a total cost of $227,425.96.

31.     On or about March 22, 2017, NP New Castle paid A.R. Sokol $4,683.28 for snow removal of "light ice" that occurred on March 3, 2017.

32.     On or about March 27, 2017, Sokol contacted Greg Norris ("Norris"), an employee and agent of the Defendants, to discuss the unpaid snow removal invoices. Norris asked Sokol whether he would agree to discount the total amount owed.  Sokol refused to reduce his bill and Norris assured Sokol that Northpoint Development would pay the total amount of $227,425.96.

33.     Before the Contract was signed and in effect, A.R. Sokol performed snow removal services in good faith in the amount of approximately $103,796.80.

<u>**COUNT I – BREACH OF CONTRACT**</u>
**(against both Defendants)**

34.     The Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 33 as though fully set forth herein.

35.     A.R. Sokol's Service Contract with the Defendants, including the Snow Removal Agreement that was incorporated, constitutes a valid and enforceable contract.

36.     The Defendants have breached the Service Contract and its incorporated Snow Removal Agreement Scope of Services.  Specifically, the Defendants failed to pay the

total amount due and owing under the Contract for snow removal work that the Plaintiff performed.  Further, the Defendants failed to pay the total amount due after assuring the Plaintiff on two separate occasions that he would be paid in accordance with the Contract.

37.     A.R. Sokol has performed all of its obligations under the Service Contract.

38.     As a result of the Defendants' continuing breaches, A.R. Sokol has suffered and will continue to suffer damage.

39.     Under the terms and conditions of the Contract, "should either party hereto bring suit of institute any proceedings to enforce the terms hereof, any judgment awarded shall include court costs and reasonable attorneys' fees to the successful party."

WHEREFORE, the Plaintiff, A.R. Sokol, Inc., respectfully requests that the Court enter judgment in its favor and against the Defendants, Northpoint Development, LLC and NP New Castle, LLC, and award the Plaintiff damages in the amount of $227,425.96, along with court costs and reasonable attorneys' fees.

## COUNT II – QUANTUM MERUIT
### (against both Defendants)

In the alternative, if it is determined that no written contract and no implied-in-fact contract existed between the Plaintiff and the Defendants as alleged in Count I, the Plaintiff alleges as follows:

40.     The Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 39 as though fully set forth herein.

41.     The Defendants were aware that A.R. Sokol was performing snow removal work pursuant to the Contract and, accordingly, are indebted to A.R. Sokol for the fair and reasonable value of the services performed.

42.     The Defendants accepted, used and enjoyed the benefits of the snow removal services provided by A.R. Sokol.  During the time A.R. Sokol was performing snow removal services for the Defendants, the Plaintiff removed a total of approximately 28 inches of snow over the course of four occasions on the Defendants' two million square foot Mall property.

43.     A.R. Sokol has requested payment from the Defendants for the fair and reasonable value of the services the Plaintiff has performed.  However, despite promising to pay the entirety of the outstanding bill, the Defendants have failed to pay A.R. Sokol for the services rendered.

44.     The fair and reasonable value of services now past-due and owing by the Defendants is $227,425.96.

45.     As a result of the Defendants' failure to pay A.R. Sokol for the snow removal services provided, A.R. Sokol has suffered and will continue to suffer damages.

46.     Under the terms and conditions of the Contract, "should either party hereto bring suit of institute any proceedings to enforce the terms hereof, any judgment awarded shall include court costs and reasonable attorneys' fees to the successful party."

WHEREFORE, the Plaintiff, A.R. Sokol, Inc., respectfully requests that the Court enter judgment in its favor and against the Defendants, Northpoint Development, LLC

and NP New Castle, LLC, and award the Plaintiff damages in the amount of $227,425.96,

along with court costs and reasonable attorneys' fees.

Respectfully submitted,


/s/ Franklin E. Kepner, Jr.
Franklin E. Kepner, Jr., Esquire
Kepner, Kepner & Corba, P.C.
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No. 26156
Attorney for Plaintiff

/s/ Franklin E. Kepner III
Franklin E. Kepner III, Esquire
Kepner, Kepner & Corba, P.C.
123 West Front Street
Berwick, PA 18603
(570) 752-2766
I.D. No. 323158
Attorney for Plaintiff